The first case on the docket is United States v. Salas, 20-2158, and we'll hear first from Mr. Pincus. Thank you, your honor, and it pleases the court. My name is Howard Pincus from the Federal Public Defender, and I represent Clifford Salas. In seeking an upward variance, the government invoked the potential injury or loss of life of those working in a call center that was next to the tattoo shop, but there was nobody working in the call center when the arson took place at two in the morning. By its own words, the district court relied on the reasons cited by the government in imposing the exact 43-month upward variance sentence it sought. District court's reliance on a clearly erroneous fact is plain procedural error and requires that Mr. Salas be resentenced. Mr. Pincus, now the statement that defense, that government made during the sentencing hearing, I guess it could be, you know, taken a couple of different ways. When we consider plain error at prong two, are we evaluating the obvious or the plainness of the judge's mental process or what the judge actually said? Well, I mean, I guess what the judge said was I'm ruling in part for the reasons stated by the government. This court has to look, of course, to whether the fact that the government asserted is itself clearly erroneous, and obviously so, and it is here. The government said it not just once but twice. In its sentencing memorandum, it said there was great potential for harm, quote, based on the fact that the Irish Inc. was next door to a call center that employed dozens of people. It expressly linked the great potential harm to the fact that there were people actually working in the call center. Now, reiterated this. Yeah, that, okay, and I'm sorry to talk over you, Mr. Pincus, but aren't you creating an inferential step when you equate those two? If there was a great danger because there were people in the call center, one could at least conceivably interpret that as meaning that all these people at a call center, who knows if they are going to be coming to work at two o'clock in the morning, as opposed to this is a call center, there, as a result, we know that they are open 24 hours a day. There's always someone there. That at least arguably is ambiguous. Do you disagree with that? I do disagree with that. The court is, the prosecution was saying, based on this fact, there was this great potential for loss of life. And ordinarily, there wouldn't be people at a business at two o'clock in the morning. The clear import of its statement is that here, in fact, there were people and that's what caused great potential for harm. That's certainly what it's leading the court to believe. And it reiterated the point at sentencing. It said that the arson, quote, endangered everybody. Mr. Pincus, could that reference have been to the harm that a fireman would have to face if the fire got out of hand? No, it said there was a great potential in the sentencing memorandum, it said great potential for harm based on the fact that the Irish Inc. was next door to a people. Firefighters respond to any arson. That's the baseline. The government here was saying, look at all these people that could have been hurt or killed because they were working at the call center. And that's the point it made again, in open court at sentencing. It said, let me let me let me interrupt you for a minute. So I think that's the point that that Judge Bacharach was making. The you're part of the statement where you say because these people were working in the call center is is the inferential step. I mean, there was the great potential for loss of life due to the fact that there was a call center there. They're just lucky that there didn't appear to be anyone there. And so I mean, it's it's not it's not an inaccurate statement by the prosecutor. I mean, and especially on plein air review, it seems like, like you're adding something for us to consider when on plein air review, perhaps we should even be considering it more narrowly. Well, the the potential loss of life only exists, because because the call center employs dozens of people, at least to those people in the call center, if the call center is actually operational at the time, if people are working there, and we know that's not true. Mr. Horvath, who the government called a trial and who was the IT person for the call center said nobody was working there at that time. And the point the government made at sentencing was exactly the same one it made in its sentencing memorandum. It said the arson endangered everybody that was working in the strip mall, then said, then referenced the call center and said, thank God, there was no loss of life or injury. That can only mean that it's fortunate that none of the people who actually were working there at that time were injured or killed. And it's just not the case that in the call center. Can I ask a question about the IT expert? Did he say that nobody was working there at the time because they never have a night shift? Or did he say they happened to not be on work that night, or they were taking a break? Or did he explain if it was just a lucky coincidence, nobody was there that night, or whether nobody was ever there? He did not explain that. He just said nobody was working there that night. And that's what the government said was, in fact, the case that there was a potential loss of life because people were working in the call center. That could only mean on the night of the arson. And in fact, that just is not the case. And I don't believe the government asserts that that was the case that night. The testimony at trial on this point was clear. Nobody was working at the call center that night. And the district court plainly relied on what the district courts, what the government said. The court said it was imposing its variant sentence in part for the reasons stated by the government. And this was not some peripheral matter. This was something that was an important point that the government made in the sentencing memorandum and in open court. Mr. Pinkes, what bothers me is the problem about plain error that we're on review here, because there was no objection made. This is the perfect example of how an objection would clarify everything. If your client had said, hey, there's nobody working at the call center that day, we then would have been clarifying of exactly what the judge said. But because no objection was made, we have clear error review. And frankly, in my opinion, that may be a very substantial factor in how we look at this case. So I'd like your views on the plain error issues. Sure. It's always the case that an objection would clear up whether there was error. When the court makes a legal mistake, if defendant had objected, the court would have had the opportunity to get it right. The very reason for plain error is to notice obvious mistakes that were made and not brought to the court's attention. So to say, if this had been brought to the attention and might have been cleared up, that can be said in almost every plain error case, with the notable exception of where the law has changed between trial and appeal or sentencing and appeal. Here, what we have is the government making a representation about people being in the call center. We have testimony at the time of the arson. We have testimony that at the time of the arson, nobody was in the call center. We have the government saying, or the court saying, I'm stressing the dangerousness and how exceptional this arson was. And of course, there could always be injury to firefighters, but it's much more dangerous and it's much more serious if the fire actually puts at risk the life and health of people. Mr. Pincus, could you explain one of the chronology? After the testimony that there was nobody in the call center at that time, did the government, after that testimony, make the argument about this is a danger because of all the people that could have been exposed from the call center? Or did the government make that argument before the testimony came in? Well, that really wasn't a big issue at trial. Remember, we're here on a resentencing. The trial was five and a half years before the resentencing here. And the trial was about whether Mr. Salas was guilty of the arson and ultimately the 924C that was vacated by this court on the first appeal. So it just was not a focus of the trial. The government did introduce evidence that firefighters responded, that there's always a risk when you within 10 minutes, it was completely resolved. But be that as it may, we're not saying that arson doesn't create danger. What we're saying here is the government was invoking the specific danger, the great potential for loss of life or injury to those people working in the call center. And that just is not true. And that painted a false position for the district court that it expressly relied on in imposing the variant sentence, varying upward by 43 months. Mr. Prentice, let me ask you a hypothetical question. Let's say I office in an office complex and I have some clerks that are overly diligent and come in at all hours of the day, sometimes even stay 24 hours a day. By the way, this is not entirely a hypothetical. And lucky you. It is hypothetical, I promise. Very diligent. And so, and in someone, God forbid, throws a Molotov cocktail in my office complex and does start a fire. And the judge that imposes the sentence says something much like what the judge said here. And that is that this endangered all of Judge Bacarach's law clerks. Now, there wasn't anybody there. One of the differences between my hypothetical that makes it a little bit more benign than what happened is we know that one of the co-owners of the ink store, of the tattoo parlor was there just a about an hour earlier. But in that hypothetical, if the judge were to say that this imperiled all of Judge Bacarach's law clerks, does that obviously mean that the judge mistakenly thought that one of my law clerks was actually there? Or could it at least reasonably be interpreted as being a suggestion that if someone happened to do what they sometimes do, work around the clock, that they could have been killed? I'm sorry? I'm sorry. I just said the question is, would that obviously be wrong for the judge to say that? Yes. If the court is saying, obviously, there is or there was in fact danger to the people, as opposed to people could have been if somebody were working there. That's not what the government represented. The government didn't say people could have been in the call in the strip mall. People could have been working late night. He was oblivious to that risk. That's what they're saying they meant now. But what the government said at the resentencing was there were people working at the call center. That's what created great potential for loss of life and for injury was that people were working in the call center. Mr. Pincus, let me stop you there. I've just been looking in the brief. These are the exact language that you quoted to us that the judge said, that there was the great potential for loss of life. There was really extraordinarily dangerous nature of this crime. Great potential for harm to people. There was a great potential for harm based on the fact that the Irish Inc. was next door to a call center that employed dozens of people. Those are much more vague than what you're saying to us on what seems to be a critical point. That is, this idea that the government was saying there were people in there, so it was very dangerous. It seems to me that the district court was cognizant that there was perhaps not a lot of people, if any, in there, but that it still thought that it created a great potential for danger. That, to me, wouldn't be obviously wrong. But the government, not only in sentencing memorandum, it says based on the fact that it was next door to a call center that employed dozens of people, they would only be at risk if they were actually there. But then at sentencing, what the government said was it endangered everybody that was working in the strip mall and then specifically referenced the call center. That is a representation that there were people that were there. What the court is saying is for the reasons stated by the government and then says the extraordinarily dangerous nature of the crime. It's relying on what the government said, which was people were working in the call center. How do we know what references of the government the court was referring to? Perhaps the court was referring to the references cited by Judge Carson rather than the statement that you're referring to. Well, this was a central point made by the government as to why this arson was especially dangerous and why, thank God, nobody was killed or injured. And this court has said in Beaver that the district courts expressed reliance on a factor. Here, the reason stated by the government is enough. It doesn't have to be the only reason, but that express reliance establishes the third prong of fourth error and also warrants this court's exercise of its discretion. So we'd ask the court to vacate Mr. Sal's sentence and remand for re-sentencing. Thank you. Okay, Judge Abell, do you have any additional questions? No. Judge but I'm going to give you, in fact, we asked you a little bit beyond 15 minutes. So I'm going to give you one minute for rebuttal time. And to be fair, I'm going to give Mr. Jordan one more minute. So you have 16 minutes. Okay. Good morning. May it please the court, counsel. My name is Aaron Jordan. I'm an assistant United States attorney in Las Cruces, New Mexico. And I indicted this case and several defendants involved in a variety of crimes back in 2012. This crime occurred back in 2012, coming up on 10 years now. And myself and a colleague, Marissa Lazarga at the time, now Marissa Ong, tried this case in 2015. I handled the first appeal against Mr. Pincus as well. And government lost in that case due to the 924C arson being invalidated as a predicate under 924C. And so I also obviously handled the re-sentencing. Miss Ong assisted with the sentencing memo in that case. And so I'll move on from there. It's worth noting that Mr. Pincus' last statement is very important. It appears that we're here today because of something that I said at the re-sentencing hearing. But I was obviously not the sentencing court in this case. But the judge specifically said for the reasons stated by the Mr. Pincus' argument is that there is an obvious error because the judge specifically adopted something that you had said that he says is factually inaccurate. That seems to be a logical argument. What's wrong with that? Well, Your Honor, this is as good a time as any to bring up Beaver, which is a very helpful case that Salas cites in his reply brief. And that case is very because it's the exact opposite of what happened here. And I'll go ahead and quote the language in that case. That case gives us a clear, shining example of what an explicit express finding is. That was the first question I asked myself when I started responding, when I started writing the response to Mr. Pincus' opening brief. And that is what constitutes a finding? And Beaver gives us that. And Beaver, the district court expressly twice, at least twice, and perhaps more doubled down on the use of a comparison between similarly situated federal defendants and state defendants in order to justify the upward variance in that case. And quoting from Judge Abell's opinion in that case, page 748, here, the district court expressly justified the upward variance it imposed in part because of the disparity between Beaver's advisory guidelines range and the likely sentence he would have received in state court. Going on, this court said, we must conclude on this record that the court explicitly justified the upward variance, at least in part, on disparities between similarly situated federal and state defendants. And when you look at the words of the district court in that case, the court is plainly saying, I'm partially basing this sentence on the fact that there's a disparity between federal defendants facing a sentence for this crime and state defendants in New Mexico also facing a sentence for this crime. The court said it with its own mouth and made those findings. That's just not what happened in this case. Okay? And so here, the district court didn't even commit error, much less plain error. Well, before you move on to Prog 1, I'm still trying to figure out why you say that the judge didn't incorporate what you said when the judge specifically said, for the reasons stated by the government. You know, we have oftentimes district judges, magistrate judges that rule for the bench, and they say, for the reasons stated by the plaintiff, for the reasons stated by the defendant. And it strikes me as just counterfactual to say that the judge in those situations is not specifically relying on the statements made by the party for whom the judge has specifically incorporated as a reason for the decision. I understand that, Your Honor. And if this court is saying that, you know, that's an incorporation by reference, I think the government can live with that, because what I did not say, here's what I'm being accused of. I said at the time that Clifford Salas firebombed through two Molotov cocktails into Irish Inc., there were people inside the strip mall at that time. That's not what I said. And now what I inartfully said was it endangered everyone that was working at the center. What I should have said, to be more clear, was that Salas had no idea, there's no evidence that Salas had any idea, and there easily could have been people in there. And there were, obviously, at that time of year, the strip mall had multiple businesses in it, including the call center. And this is, by the way, the reason that this point has not been clarified is because didn't raise it below. This just has never been an issue. Well, Mr. Jordan, so, you know, both of those things are true. I don't think anybody would question, maybe, that it was inartful, and secondly, that it could have been clarified. But as Mr. Pincus argued, that's always the case when we address plain error, and we have to deal with it, you know, with the legal standard as it was working at the call center. And you said what you should have said. Well, you didn't say what you should have said, and I'm not picking on you, but his argument is, you said what you said, the judge apparently didn't pick up on the inaccuracy of that, and the gist of what you were hoping to say, or trying to say. He adopted what you said, and his argument is, well, it's anybody in the call center because there was nobody that was working at two o'clock in the morning in the call center, so why isn't that an obvious error? It didn't imperil anybody that was in the call center because there was nobody there at the time. Well, your honor, that's just not a fact. That's not a fact that there was no one there. That's counsel's argument this morning, but that's not a fact that's a part of the trial, the sentencing, or the resentencing because it was not raised by Mr. Salas below, and I easily could have called a representative from every business. There were several in that strip mall at the time, and this is not a fact that's in the record. I was attending weekly physical therapy sessions at a physical therapy business down the street that had late hours. There was a apartment building that backed up to it, but in terms of what the district court, the district representative for the call center specifically said that there was nobody at the call center at that time at two o'clock in the morning. The I.T. director said that at 2 a.m. there was no one there on that day, and that was not brought forth at sentencing, but honestly, your honor, we didn't press on that issue because it wasn't an issue, but I'm not saying that that was inaccurate, but the I.T. director was not in a position to tell us all of the personnel that were in the call center. He was just in charge of the camera system, and so that's all he was testified to call about was the camera system and why it worked and for us to introduce the video that captured the actual firebombing. He was not an H.R. person. He was not an admin person. He was not in management. You're not asking us to affirm based on, because I mean you didn't make this argument even in your brief, you're not asking us to affirm because there were people in the call center at 2 o'clock in the morning. Okay. I just want to make sure because I'm getting confused. Okay. No, that's just not a fact. The fact that there were not, today counsel is asserting that there were not people there. And my point, there was scant evidence of that in terms of the call center. There was zero evidence of the rest of the businesses or the surrounding areas who was endangered during trial. That was just not an issue at trial. At the resentencing hearing, there was zero evidence on this point in terms of. Let me ask you this. Let me ask you, was the evidence, what was the nature of the evidence before the court that there was nobody at the call center at that time? Was it simply statements by colonel or was there a witness that testified about that? The only evidence at trial, it was ambiguous because you had the IT person saying there was no one in the call center. There was no evidence at trial about the rest of the businesses except for the tattoo parlor. And we know there was someone there perhaps about an hour before the fire bombing. And then there's no evidence. You do have on the video, you have a couple of trials. So there's no evidence of anybody else and any other businesses, like late cleaning help or anything like that. No, your honor, that was not an issue. No, I'm just trying to decide what was the difference between evidence and argument by counsel, because we all know that argument by counsel is not accepted as fact. Correct. And the evidence, there was zero evidence in terms of who was in the strip mall other than the call center at trial, at sentencing, or the re-sentencing hearing. There's just no evidence in the record of that. All we have trial is a statement from the IT manager at the call center specifically, and then video of two cars in the parking lot. That's all we have from trial. We don't have anything from the sentencing or the re-sentencing. But again, it's important to look at the district court's actual words in this case when it justified the upward variance. And it says that this is in page 17, volume three of the record on appeal. I think an upward adjustment is appropriate on these facts in this history. And for the reasons stated by the government and the really significant criminal history, the dangerous premeditated nature of this crime. And as I've mentioned, how those two the criminal history and the premeditation and the really extraordinarily dangerous nature of this crime, how it stands out in my experience, the experience of a judge that sentenced 18,000 people, I think an upward variance is appropriate. And so it's important to actually take the district court at its word in this case. And what counsel is asking, what solace is asking, is for this court to assume an erroneous picture of the facts in the judge's mind. And there's just no evidence that that was the case. This whole concept that the extraordinarily dangerous nature of the arson depended on someone being in the strip mall, that's just not a fact. That's never a comparison that the district court made. It's never an explicit comparison that the government even made, that it would not be dangerous. But unless there's people in a strip mall, that's not a fact that's in evidence in this case. Besides the call center and the bomb facility, how many other shops were in that mall? Your Honor, that's not a fact that's in evidence. I can tell the court anecdotally. No, no, I don't want any anecdotal stuff. I just want evidence. There's no evidence. There's no evidence on that point. What we do have is the arson investigators stating that businesses that neighbored the call center also suffered fire damage. And if you look in the PSR, it's worth noting that this, aside from endangering the nearly two dozen firefighters that had to respond to put it out, especially the few firefighters that actually had to breach the building to put it out, Salas, when he threw two molotov cocktails inside this commercial strip mall, he caused over $100,000 in damage. And so that's the victim impact statements in the PSR. There's plentiful evidence of the dangerousness in this case. There's evidence from the firefighter, from the arson investigator. The judge never said anything, did he, about danger to the firefighters? He did not, Your Honor, and he also did not... I'm looking at this transcript for the re-sentencing hearing, and I'm having trouble finding the quote about great potential for loss of life. And so, in terms of justification of the variant sentence, and so perhaps if counsel feels inclined, he may want to point that out, but that's just not a finding that the district court made in this case. And so, it's another important point I want to make before I run out of time is, this is the second sentencing hearing. This is the re-sentencing hearing. That point was on page nine, what Mr. Jordan said at sentencing, on page nine of the record. Okay. And so, again, we're talking about what I said and not what the district court said. And so, it's important to point out that this is the second sentencing hearing. On the same exact facts, at the first sentencing hearing, what does the district court say about the sentence that imposed there? The 35-year sentence that the district court imposed there. It said that it didn't hesitate, and the district court thought Solace had earned that 35-year sentence. Same exact facts. Okay. And so, to now argue, and so jumping, to clarify, the government should win on prong one of the plein air analysis as to the first issue. In terms of whether or not any error was plein, how can it be plein when it's not expressly on the record, and Solace is asking this court to read the judge's mind and not hold the district court accountable for what it actually said. In terms of the third prong, the question is, had Solace raised the empty strip mall argument below, is there a reasonable probability that he would have received a lower sentence from the district court, and the answer is absolutely not. That just surprises me that you would interpret that as the inquiry at prong three. I thought that the inquiry at prong three is assuming that there's an error, and the error here would be consisting of the judge relying on a factual mistake. Is there a reasonable probability that had the judge not made that reasonable mistake that it undermines the confidence in the sentence that he ultimately imposed? But am I wrong about the inquiry at prong three? Your Honor, my understanding is it's the prejudice prong, and we ask how would the outcome have been different, and my response to that question is everything else remains intact in terms of the premeditated nature of the crime, in terms of Solace's criminal history, in terms of the dangerousness that the fire posed to the firefighters, and the great potential for harm, including property damage. And so there's the point here that I'm trying to make is that Solace did not raise this issue below, and had he done so, there would have been an opportunity for the government to bring in more evidence in terms of, you know, an apartment building just behind the strip mall. But the reason that we're in this position is because this issue was not raised at all. But again, I would ask the court to hold the district court accountable only for what it said and what it actually found, and find that there's no plain error, there's no error, certainly no plain error. And I will state that as to Solace's second argument, he's correct on the second argument, and the government concedes that the 180-month sentence as to count four was an illegal sentence, and that what the government is asking for is a limited remand as to count four alone in this case. Thank you. Thank you. You are out of time. Judge Abell, do you have any questions for Mr. Gordon? No, thank you. All right, Judge Carson, do you? No, thank you. All right, Mr. Speakers, I think I gave you an extra minute. Thank you, Your Honor. We have to go with what the government actually said, not what it meant to say. What it actually said, the reason it gave to justify the upward variance in terms of harm was that people were working in the call center. Not about people potentially working in an apartment building or in the neighborhood or anything else, people working in the call center. There's no evidence to support that in the record, that at two o'clock in the morning, anybody was working there, and in fact, the evidence we have in the record directly contradicts this. It was for the government to establish the facts on which it sought an increased sentence. Here, it invoked a fact that is directly contradicted by the record, and when the district court says, I'm imposing sentence in part for the reasons stated by the record, that is an incorporation of what the government stressed in sentencing memorandum and in open court, and this court should not disregard what the prosecutor actually said and what the district court actually said. It should find plain error, vacate the sentence, and remand for re-sentence. I'm afraid I'm extending the time, but I'm just focusing now on the word working. I could say there are, yeah, that's not a deserted building. There are people that work there. Without saying that they're there right this minute, I could say there's people working in our courthouse, even in spite of the pandemic. Yeah, there's people that are working there, but that wouldn't necessarily say that they were there at any time. Do you have any thoughts about that, Mr. Pincus? Well, the only reason to mention, to say that it endangered people that were working in the call center is to make the representation that people were actually working there at that time. I think if I were to say how there's people working in the courthouse would imply that it is endangering because that raises the possibility that there may be people there at that time. On the other hand, with COVID, we're all working remotely a lot. So just because there are people working in the courthouse even during business hours might not mean that they're there right now. But it's not to say that people might not be coming in to get supplies or to do other things. It's basically saying it's not a deserted courthouse. Yeah, there's people that are working there even during COVID times, people come in, they're working there, working there all the time. And that's different from saying, I've done a survey of the courthouse on that day, minutes before the bomb, and I did this survey, and by the sound of a gun, I saw three people in the courthouse. That's a very different story. I mean, the potential ambiguity of this is what troubles me in the context of plain error. And the government is saying, that's what we meant to say. But what it actually said was, endanger people that were working in the call center. And the default would be that businesses are not typically open at two in the morning. This is a representation to the court that in fact, that typical default didn't obtain here and that people really were working in the call center, and that put them at risk. That's what created the potential loss of life and thank God nobody was injured. To me, the words are different. If I were to say there were people present in the courthouse at that moment, that's an unequivocal statement, I can't get around. But if I say there's people working in the courthouse, that's not to say whether they're there or not. It's simply to say there's a possibility that they're there at any given time, because they're working there. That's their job. So even this statement is still an ambiguity, it seems to me. They're typically working there during working hours. And this was a representation that at two o'clock in the morning, they were working there. Not that they could have been working there, not they might have been working there. If that's what the government wanted to say, it should have said that. Was the statement by the government that there are people working there at two in the morning? Did the statement say that? The statement was one of them, the Molotov cocktails, hit through a plate glass window and endangered everybody that was working in the strip mall. In other words, if that Molotov cocktail at that time endangered people working in the strip mall, it wouldn't endanger them. And then the government referenced the call ceremony. Wouldn't put them in harm's way if they weren't there, if they weren't working there at that time. That is the clear reason for saying, making that statement. I understand Judge Bagwright to be very patient with me. That answers my question. I appreciate your questions, Judge Well, thank you both, Mr Pincus and Mr Jordan. This is very well presented in your briefs and in argument. So this better will be submitted. Thank you both.